ERIKSON LAW GROUP
David Alden Erikson (SBN 189838)
Antoinette Waller (SBN 152895)
S. Ryan Patterson (SBN 279474)
200 North Larchmont Boulevard
Los Angeles, California 90004
Telephone: 323.465.3100
Facsimile: 323.465.3177

Attorneys for Plaintiffs Corinna Warm and
Studio Warm LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CORINNA WARM, an individual; and STUDIO WARM LLC, a California limited liability company. | Case No. |
| | **COMPLAINT** |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| v. | |
| INNERMOST LIMITED; LIGHTFORM CANADA INC.; IM DESIGN CONCEPTS LLC, a Florida limited liability company; and DOES 1-10, inclusive, | |
| Defendants. | |

Plaintiffs Corinna Warm ("Ms. Warm"), and Studio Warm LLC, ("Studio Warm" and with Ms. Warm, collectively, "Warm" or "Plaintiffs") bring this action against Defendants Innermost Limited ("Innermost"), IM Design Concepts LLC ("IMDC"), LightForm Canada Inc. ("LightForm"), and Does 1-10 (Innermost, IMDC, LightForm, and Does 1-10, collectively, "Defendants").

**INTRODUCTION**

1.      This action arises from Defendants' intentional, willful, and continuing creation and exploitation of unauthorized replicas and reproductions of Plaintiffs' original designs and intellectual property, and Defendants' usurpation and misuse of Ms. Warm's name and persona in passing off Defendants' goods as Plaintiffs' work. By this action, Plaintiffs seek preliminary and permanent injunctive relief, compensatory damages in an amount to be determined at trial, treble damages, and attorneys' fees for Defendants' copyright and trademark violations and Defendants' misappropriation and unauthorized use of Ms. Warm's name and likeness, together with remedies for related common law and statutory claims for deceptive practices and unfair competition.

**JURISDICTION AND VENUE**

2.      Plaintiffs bring this action for copyright infringement (17 U.S.C. Section 101, *et seq.*), violation of the Lanham Act (15 U.S.C. Section 1051, *et seq.*), unfair competition, violations of the right of publicity under California law, and common law claims.

3.      This Court has original subject matter jurisdiction over this action and the claims asserted herein, pursuant to 28 U.S.C. Section 1331 ("federal question jurisdiction") and 1338(a)-(b) ("patent, copyright, trademark and unfair competition jurisdiction") in that this action arises under the laws of the United States and, more specifically, Acts of Congress relating to patents, copyrights, trademarks, and unfair competition. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367(a) in that they are so related to the federal law intellectual property claims in the action that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(1)-(3) because a substantial part of the events or omissions giving rise to the claims occurred in this District in that, *inter alia*, Defendants offer the designs in question for

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

COMPLAINT

sale in this District. Defendants also transact business in this District, including, *inter alia*, by selling and marketing their products in this District and throughout California.

5.      Each of the Defendants is subject to the personal jurisdiction of the Court because they do or transact business in, have agents in, or are otherwise found in and have purposely availed themselves of the privilege of doing business in California and in this District, and because the alleged misconduct was directed to California and this district.

## THE PARTIES

6.      Plaintiff Corinna Warm is an individual residing in Los Angeles, California.

7.      Plaintiff Studio Warm LLC is a California limited liability company, with its principal place of business located in Santa Monica, California. Plaintiff Studio Warm was originally founded in London and operates out of London and Los Angeles.

8.      Defendant Innermost Limited is a company registered in the United Kingdom and Wales. Plaintiffs are informed and believe and thereon allege that Innermost's parent company is Innermost Holdings PTY Ltd., a company registered in Hong Kong. According to its United States website, www.innermost.us, Innermost is "a British design brand, founded by Steve Jones and Russell Cameron in London, and working with designers from all over the world." Innermost states (and Plaintiffs allege) that it operates in the United States, "[w]orking closely with our first-class US representatives, IM Design Concepts." Innermost sells its products throughout the United States and in California and offers the infringing designs for sale in California. In addition, Innermost consciously and purposefully directs its marketing activity to exploit the California market.

9.      Defendant IM Design Concepts LLC ("IMDC") is a Florida limited liability company, with its principal place of business located in Tampa, Florida.

Plaintiffs are informed and believe and thereon allege that IMDC was originally formed as a Connecticut limited liability company and later converted in or about January 2020 into a Florida limited liability company. IMDC sells its products throughout the United States and in California and offers the infringing designs for sale in California. In addition, IMDC consciously and purposefully directs its marketing activity to exploit the California market.

10.    Defendant LightForm Canada Inc. ("LightForm") is a company of unknown organization, headquartered in Canada. LightForm sells its products throughout the United States and in California and offers the infringing designs for sale in California. In addition, LightForm consciously and purposefully directs its marketing activity to exploit the California market.

11.    Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as Does 1-10, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities when the same has been ascertained. On information and belief, each fictitiously named Defendant is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

12.    Each of the Defendants acted as an agent for each of the other Defendants in doing the acts alleged, and each Defendant ratified and otherwise adopted the acts and statements performed, made, or carried out by the other Defendants to make them directly and vicariously liable to Plaintiffs for the conduct complained of herein.

## GENERAL ALLEGATIONS

**A.    Studio Warm's founder, Corinna Warm, is an acclaimed artisan and designer.**

13.    Studio Warm's founder and creative director, Corinna Warm, is the designer and manufacturer of distinctive high-end furniture and decorative objects.

Ms. Warm is renowned for her works of timeless elegance, often balanced with a sculptural aesthetic. Her work has been presented in exhibitions in New York, Hong Kong, Stockholm, Paris, Milan, and Los Angeles, and has been lauded in the national and international press. Ms. Warm started her studio in 2007—and it has since grown into a boutique design practice working on a diverse mix of projects across disciplines and continues to design and distribute its own collection.

14.    A graduate of London's prestigious Central Saint Martins College of Art and Design, Ms. Warm worked with the "Who's Who" in avant-garde design in Milan and London before spending three years designing for royal cabinet maker David Linley, where she was exposed to the fundamentals of traditional cabinet making and classical furniture design and production—a turning point in her career that fundamentally changed her focus and design sensibility, instilling a love of natural materials and well crafted, long-lasting design.

15.    Ms. Warm previously worked as an interior design consultant on luxury developments across London, and later moved into high-end retail design, working with some of London's most creative retail and branding agencies. She founded her studio in 2008, following the successful launch of her brand Warm during the London Design Festival in 2007. Ms. Warm's collection of contemporary furniture, traditionally crafted to the highest standard, was launched at a time when the designer maker/crafts movement was still in its infancy and was lauded by industry experts for its high quality and "contemporary-classic" design.

16.    Warm's designs have launched at the most important annual trade shows, including Maison & Objet in Paris, Furniture & Light Fair in Stockholm, Euroluce at Salone del Mobile in Milan and ICFF in New York. Ms. Warm's designs, including the *Circus* collection of pendant and wall lights and the *Glaze* lighting line have gained global popularity.

17.    Ms. Warm previously had a licensing relationship with Defendant Innermost. That relationship has ended and Innermost has no right to produce,

advertise, sell, market, promote, or otherwise distribute any of Ms. Warm's designs or to associate itself in any way with Ms. Warm or Studio Warm.

18.    Ms. Warm's *Circus* and *Glaze* lighting designs gained immense popularity and have been highly sought after for projects across the globe. These lighting fixtures, examples of which are shown below, are creative works of art.

***Corinna Warm***




*Circus Pendant*                              *Glaze Pendant*

**B.    Innermost, IMDC, and LightForm, embarked on a bold and ongoing infringement campaign of Warm's designs.**

19.    Innermost boasts that it respects intellectual property rights—including by warning customers about knockoffs on its website. Innermost's co-founder, Russell Cameron, even serves on the advisory council of the organization of Anti Copying in Design. And yet Innermost has viciously and willfully copied and infringed Plaintiffs' designs.

20.    During the parties' licensing relationship, Ms. Warm's "*Circus*" and "*Glaze*" designs were among Innermost's most popular products.

21.    As part of the license agreements between Innermost and Warm, Innermost agreed "to respect Corinna Warm's rights as the designer to be associated

with the work," and that "All intellectual property rights, copyright and design right shall remain with Corinna Warm." In addition, Innermost agreed "that it nor of its subsidiary companies will copy or imitate the designs… Or any distinctive feature of the designs or authorize others to do so."

22.     Since terminating the contractual relationship with Innermost in 2017, Warm has undertaken to manufacture and sell the *Circus* and *Glaze* lines of lighting products on its own and invested significantly in this endeavor.

23.     Despite having no rights with respect to Warm's products, Innermost inexplicably sells such products in the United States—and indeed arrogantly and willfully continues to do so to this day despite Warm's repeated objections. To make matters far worse, Innermost markets its unauthorized products under the same name "Circus" as does Warm (with respect to both pendants and wall lamps). This of course amounts to nothing less than *counterfeiting*. For example, the marketing materials below appear on Innermost's website.

 

24.     Innermost has also improperly and similarly continued to exploit Warm's *Glaze* designs, as shown in the below images currently displayed on its website.

 

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

25.    In addition to pendant lights, Innermost has also improperly and similarly continued to exploit Warm's *Circus Wall* light design. Innermost's 2020 brochure features a replica of Warm's *Circus Wall* light with a minimal variation to its arm, all other components being identical.

 

Studio Warm's *Circus Single Wall*                    Innermost's *Circus Wall*

26.    Despite Warm's continuing and vociferous protests and objections to these infringing activities, Innermost refuses to cease its wrongful conduct and instead has continued its infringement unabated.

27.    Ms. Warm's *Circus* and *Glaze* collections are some of Plaintiffs' most recognized works. Indeed, and as explained in more detail below, the design world and sophisticated buyers and dealers have come to recognize each of the works as originating with Plaintiffs.

28.    Despite knowing Innermost has no right to market, sell, promote, or distribute Ms. Warm's designs, and despite knowing of Warm's objections to marketing, sale, promotion, or distribution of any unauthorized replicas or copies of Warm's designs, IMDC and LightForm, working both in conjunction with Innermost and on their own, continue to market, sell, and distribute infringing designs, including on their websites, www.imdesignconcepts.com (IMDC) and www.lightformshop.com

ERIKSON LAW GROUP
ATTORNEYS
LOS ANGELES CA

COMPLAINT

(LightForm). Defendants have also improperly displayed, marketed, advertised, and sold infringing designs as Ms. Warm's products, including by LightForm, at the following link: https://www.lightformshop.com/designer-corinna-warm.

29.     Despite being on notice of Plaintiffs' protests and objections, Innermost, IMDC, and LightForm continue to exploit Ms. Warm's designs and persona, and continue to market, promote, sell, and distribute infringing goods. This constitutes willful infringement.

**C.     In May 2018, Defendant IMDC acknowledged that unauthorized replicas of Plaintiffs' works were IMDC's best-selling products.**

30.     In May 2018, Frank Fitzgerald, IMDC's CEO-Manager, attended the HD Expo in Las Vegas, presenting products on behalf of IMDC and Innermost. At the opening of the show Ms. Warm approached Mr. Fitzgerald and told him that the goods IMDC was showing as Corinna Warm designs were not Ms. Warm's licensed products. In fact, the products purporting to be Corinna Warm licensed designs were unlicensed and unauthorized knockoffs and counterfeits. Ms. Warm advised Mr. Fitzgerald that Innermost was not licensed or allowed to show, advertise, or sell Plaintiffs' products and that the infringing products would have to be immediately taken down.

31.     Mr. Fitzgerald expressed devastation that he could not show Plaintiffs' *Circus* or *Glaze* designs and stated that *Circus* was his bestselling product. It was apparent that Mr. Fitzgerald had not been informed by Innermost that Innermost was not authorized to sell Plaintiffs' designs. Mr. Fitzgerald confirmed to Ms. Warm that Mr. Fitzgerald would tell anyone inquiring about *Circus* or *Glaze* that the product was designed by Corinna Warm and available from Studio Warm rather than Innermost. Mr. Fitzgerald also confirmed that he would share any contacts seeking Ms. Warm's designs with Ms. Warm after the show, and he would supply Ms. Warm with a statement of any current stock levels of products attributed to Ms. Warm. The reason Mr. Fitzgerald offered to share leads and provide information was because he had

proposed to purchase the product from Studio Warm instead of Innermost as Mr. Fitzgerald did not want to lose his bestselling product. Despite these promises, Plaintiffs never received the information from Mr. Fitzgerald, and IMDC has continued selling the knockoffs as Ms. Warm's designs.

32.    Despite being on notice of Plaintiffs' protests and objections, Innermost and IMDC have continued to exploit Ms. Warm's designs and persona and have continued to import, sell, promote, and distribute infringing goods in the United States. This constitutes willful infringement.

**D.    After being spurned by Ms. Warm, Defendants produced and sold knockoffs of her signature works.**

33.    As a result of Plaintiffs' declining to form a continuing partnership with them, Defendants have produced, offered, sold, distributed, and marketed goods that are unauthorized reproductions of two of Plaintiff's most recognized collections, *Circus* and *Glaze*. These knockoffs, examples of which are pictured above, are currently offered for sale by Defendants.

34.    Innermost has been manufacturing and selling replicas/counterfeits of *Circus* and *Glaze* designs. Innermost, IMDC, and LightForm have worked together to market, advertise, sell, promote, and distribute such works to third parties and to consumers around the world and in the United States.

35.    On information and belief, Defendants Innermost, IMDC, and LightForm collaboratively made the decision to produce and sell the knockoffs and arrived at a financial arrangement to divvy up the resulting ill-gotten gains.

36.    To further intensify the injury to Plaintiffs, the knockoffs in question have been presented and showcased on Innermost, IMDC, and LightForm's websites alongside photographs of Ms. Warm and proclaiming Ms. Warm as the designer.

37.    In addition, Innermost, IMDC, and LightForm (and on information and belief the other Defendants) have used the knockoffs for promotional and merchandising purposes.

**E.    Innermost, IMDC, and LightForm continue to willfully infringe, even after Plaintiffs demanded that they cease and desist.**

38.    Although Innermost, IMDC, and LightForm have been put on notice of Plaintiffs' claims and have acknowledged Ms. Warm's ownership of the *Circus* and *Glaze* designs including as described above, Innermost, IMDC, and LightForm continue to flout Plaintiffs' claims and sell the infringing designs internationally and in the United States.

39.    Defendant Innermost promotes and sells the infringing pieces mentioned above online via its U.S. website, www.innermost.us, through IMDC, and LightForm; and through other retail shops and partners working in the United States and California. Innermost oversaw the design, distribution, and sale of such pieces, knowingly copying Plaintiffs' works; directly benefitted financially from their sale; and had the right and practical ability to supervise and approve the misconduct alleged herein.

40.    The wrongful acts of Defendants constitute intentional wrongful conduct, with the intention on the part of Defendants of thereby depriving Plaintiffs of property and legal rights, or otherwise causing injury; and is despicable conduct that has subjected Plaintiffs to significant hardship in conscious disregard of Plaintiffs' rights, justifying an award of exemplary and punitive damages.

41.    Plaintiffs have sustained and will continue to sustain serious and irreparable injury to their business and reputation as a direct and proximate result of Defendants' conduct (as described above). Unless Defendants are enjoined by this Court, there is a substantial possibility that they will continue to engage in such unlawful, unfair, and deceptive business practices, for which Plaintiffs are without an adequate remedy at law. Accordingly, Plaintiffs are entitled to a preliminary injunction and permanent injunction against Defendants and their officers, directors, employees, agents, representatives, affiliates, subsidiaries, distributors, and all persons acting in concert with them, prohibiting them from engaging in further misconduct.

**First Claim For Relief For Copyright Infringement (re *Circus Pendant*)**

**(Against All Defendants)**

42.     Plaintiffs incorporate by this reference all other paragraphs in this pleading, as if fully set forth in full in this claim.

43.     In 2010, Ms. Warm, on behalf of Studio Warm, created an original sculptural work, entitled *Circus Pendant* (as pictured above). The work was first shown at the SaloneSatellite trade fair in Italy. The work is creative and original, constituting copyrightable subject matter under United States law. Since its creation, Plaintiffs have been and still are the sole proprietor of all rights, title, and interest in and to the copyright in *Circus Pendant.*

44.     The work is sculptural and can be perceived as a three-dimensional work of art physically and conceptually separable from its function as a light. The work, which is incorporated in the lighting fixture can be identified and perceived as a three-dimensional work of art separate from the useful article, and would qualify as a protectable pictorial, graphic, or sculptural work—either on its own or fixed in some other tangible medium of expression—if it were imagined separately from the useful article into which it is incorporated. Put another way, the work would have been eligible for copyright protection as a pictorial, graphic or sculptural work had it originally been fixed in some tangible medium other than a useful article.

45.     *Circus Pendant* is physically and conceptually separable from any useful object of furniture or lighting in that the work can be identified separately from, and is capable of existing independently of, the utilitarian aspects of any useful object. The lighting element in the *Circus Pendant* is contained inside a housing, to which the individual elements are affixed. The lighting element could be removed from (or never inserted into) this work, leaving a purely sculptural work. Further, one could easily imagine this work as separate from the housing and light, in that one could conceivably remove the housing and leave the original protected work unchanged.

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

COMPLAINT

46.     The essential creative elements of *Circus Pendant* are non-functional. There is nothing about such elements that improves the functioning of the piece as a light or yields any utilitarian or functional advantage. These essential creative elements do not make the light provided by a *Circus Pendant* light better in any way, or more interesting; nor are they essential to the use, purpose, cost, or quality of the lights.

47.     Plaintiffs have complied in all respects with the Copyright Act and all other laws governing copyright. *Circus Pendant* is exempt from the registration requirement under 17 U.S.C. § 411 because *Circus Pendant* is not a "United States work," as that term is defined under 17 U.S.C. § 101. In addition to the *Circus Pendant* copyright referred to above, Plaintiffs are the owners and proprietors of all right, title and interest to the copyrights in various iterations, embodiments, derivatives, and further editions of *Circus Pendant* which are either unpublished or not United States works.

48.     Defendants had access to Plaintiff's *Circus Pendant* design including, without limitation, through access to Plaintiffs' goods sold and displayed in the marketplace and, for Innermost, through working with Ms. Warm. At all times relevant, Defendants were aware of Plaintiffs' designs.

49.     Defendants, with full knowledge of Plaintiffs' rights, infringed Plaintiffs' copyrights by producing, manufacturing, promoting, and/or selling their "Circus Pendant" (pictured above), which is a pendant light copied from and substantially similar to Plaintiff's *Circus Pendant* design, including through Innermost's and IMDC's distribution channels (including in stores, on the Innermost and IMDC websites, through other distributors, and through interior design channels). Defendants clearly copied the separable artistic elements of Plaintiff's work. A side-by-side comparison of *Circus Pendant* with Defendants' infringing lighting reveals that Defendants slavishly copied the protectable elements of *Circus Pendant*; and that the works are substantially similar, indeed strikingly like Plaintiffs'. The infringing pieces

are knockoffs and counterfeits of Plaintiffs' designs intended to and inducing customers to believe they are purchasing Plaintiffs' designs.

50.    To make the infringement and intellectual property theft even more damaging, Defendants market and sell the *Circus Pendant* knockoffs under the same name as Warm's design – Circus Pendant and attribute the works as Warm products.

51.    All Defendants are liable for the infringement. On information and belief, all the Defendants worked together to conceive of, copy, produce, and sell unauthorized copies of Plaintiff's *Circus Pendant*, which were marketed and offered for sale by all Defendants in the United States including California, and by Innermost and LightForm in the rest of the world. All Defendants directly profited from the infringement and had the practical right to approve or veto the scheme.

52.    All such acts were performed by Defendants without the permission, license, or consent of Plaintiffs. Plaintiffs have notified Defendants in writing of the infringements. As described above, all Defendants have continued to produce, manufacture, promote, and sell the infringing products even after receiving Plaintiffs' protests and demands that such infringement cease.

53.    Defendants continue to infringe and sell the infringing works in violation of Plaintiffs' copyright, and further have engaged in unfair trade practices and unfair competition in connection with their publication and sale of the infringing works, thus causing irreparable damage.

54.    By reason of Defendants' acts of copyright infringement, Plaintiffs have suffered, and will continue to suffer substantial damages to their business in the form of diversion of trade, loss of profits, and a dilution in the value of Plaintiffs' rights and reputation, all in amounts that are not yet ascertainable, but not less than the jurisdictional minimum of this Court.

55.    By reason of Defendants' infringement of Plaintiffs' copyright, Defendants are liable to Plaintiffs for the actual damages incurred by Plaintiffs due to

the infringement, and for any profits of Defendants directly or indirectly attributable to such infringement.

**Second Claim For Relief For Copyright Infringement (re *Circus Wall*)**

**(Against All Defendants)**

56.     Plaintiffs incorporate by this reference all other paragraphs in this pleading, as if fully set forth in full in this claim.

57.     In 2014, Ms. Warm, on behalf of Studio Warm, created an original sculptural work, entitled *Circus Wall* (as pictured above). The work was first available commercially in August 2015 outside the United States. The work is creative and original, constituting copyrightable subject matter under United States law. Since its creation, Plaintiffs have been and still are the sole proprietor of all rights, title, and interest in and to the copyright in *Circus Wall.*

58.     The work is sculptural and can be perceived as a three-dimensional work of art physically and conceptually separable from its function as a light. The work, which is incorporated in the lighting fixture can be identified and perceived as a three-dimensional work of art separate from the useful article, and would qualify as a protectable pictorial, graphic, or sculptural work—either on its own or fixed in some other tangible medium of expression—if it were imagined separately from the useful article into which it is incorporated. Put another way, the work would have been eligible for copyright protection as a pictorial, graphic or sculptural work had it originally been fixed in some tangible medium other than a useful article.

59.     *Circus Wall* is physically and conceptually separable from any useful object of furniture or lighting in that the work can be identified separately from, and is capable of existing independently of, the utilitarian aspects of any useful object. The lighting element in the *Circus Wall* lamp is contained inside a housing, to which the individual elements are affixed. The lighting element could be removed from (or never inserted into) this work, leaving a purely sculptural work. Further, one could

ERIKSON LAW GROUP
ATTORNEYS
LOS ANGELES CA

COMPLAINT

easily imagine this work as separate from the housing and light, in that one could conceivably remove the housing and leave the original protected work unchanged.

60. The essential creative elements of *Circus Wall* lamp are non-functional. There is nothing about such elements that improves the functioning of the piece as a light or yields any utilitarian or functional advantage. These essential creative elements do not make the light provided by a *Circus Wall* lamp better in any way, or more interesting; nor are they essential to the use, purpose, cost, or quality of the lights.

61. Plaintiffs have complied in all respects with the Copyright Act and all other laws governing copyright. *Circus Wall* is exempt from the registration requirement under 17 U.S.C. § 411 because *Circus Wall* is not a "United States work," as that term is defined under 17 U.S.C. § 101.

62. Defendants had access to Plaintiff's *Circus Wall* lamp design including, without limitation, through access to Plaintiffs' goods sold and displayed in the marketplace and, for Innermost, through working with Ms. Warm. At all times relevant, Defendants were aware of Plaintiffs' designs.

63. Defendants, with full knowledge of Plaintiffs' rights, infringed Plaintiffs' copyrights by producing, manufacturing, promoting, and/or selling its own goods, including the "Circus Wall" lamp (pictured above), which is a pendant light copied from and substantially similar to Plaintiff's *Circus Wall* design, including through Defendants' distribution channels (including in stores, on the Innermost, IMDC, and LightForm websites, through other distributors, and through interior design channels). Defendants clearly copied the separable artistic elements of Plaintiff's work. A side-by-side comparison of *Circus Wall* with Defendants' infringing lighting reveals that Defendants slavishly copied the protectable elements of *Circus Wall*; and that the works are substantially similar, indeed strikingly like Plaintiffs'. The infringing pieces are knockoffs and counterfeits of Plaintiffs' designs intended to and inducing customers to believe they are purchasing Plaintiffs' designs.

64.    All Defendants are liable for the infringement. On information and belief, all the Defendants worked together to conceive of, copy, produce, and sell unauthorized copies of Plaintiff's *Circus Wall* lamp, which were marketed and offered for sale by all Defendants in the United States including California, and by Innermost and LightForm in the rest of the world. All Defendants directly profited from the infringement and had the practical right to approve or veto the scheme.

65.    All such acts were performed by Defendants without the permission, license, or consent of Plaintiffs. Plaintiffs have notified Defendants in writing of the infringements. As described above, all Defendants have continued to produce, promote, distribute, and sell the infringing products even after receiving Plaintiffs' protests and demands that such infringement cease.

66.    Defendants continue to infringe and sell the infringing works in violation of Plaintiffs' copyright, and further have engaged in unfair trade practices and unfair competition in connection with their publication and sale of the infringing works, thus causing irreparable damage.

67.    By reason of Defendants' acts of copyright infringement, Plaintiffs have suffered, and will continue to suffer substantial damages to their business in the form of diversion of trade, loss of profits, and a dilution in the value of Plaintiffs' rights and reputation, all in amounts that are not yet ascertainable, but not less than the jurisdictional minimum of this Court.

68.    By reason of Defendants' infringement of Plaintiffs' copyright, Defendants are liable to Plaintiffs for the actual damages incurred by Plaintiffs due to the infringement, and for any profits of Defendants directly or indirectly attributable to such infringement.

### Third Claim for Relief for Copyright Infringement (re *Glaze Pendant*) (Against All Defendants)

69.    Plaintiffs incorporate by this reference all other paragraphs in this pleading, as if fully set forth in full in this claim.

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

COMPLAINT

70.    In 2011, Ms. Warm, on behalf of Studio Warm, created an original sculptural work, entitled *Glaze Pendant* (as pictured above). The work is creative and original, constituting copyrightable subject matter under United States law. Since its creation, Plaintiffs have been and still are the sole proprietors of all rights, title, and interest in and to the copyright in *Glaze Pendant.*

71.    The work is sculptural and can be perceived as a three-dimensional work of art physically and conceptually separable from its function as a hanging light. The work gives the impression that precious metals have been merged seemingly invisibly with a fine layer of porcelain. The pendant lamps explore the application of contrasting finishes complemented by hand-spun (rather than the typically industrially spun) manufacturing process and hand applied finish. The matte shine of the copper or graphite anodized aluminum is complemented by a high gloss finish. The work, which is incorporated in the lighting fixture can be identified and perceived as a three-dimensional work of art separate from the useful article, and would qualify as a protectable pictorial, graphic, or sculptural work—either on its own or fixed in some other tangible medium of expression—if it were imagined separately from the useful article into which it is incorporated. Put another way, the work would have been eligible for copyright protection as a pictorial, graphic or sculptural work had it originally been fixed in some tangible medium other than a useful article.

72.    The *Glaze Pendant* is physically and conceptually separable from any useful object of furniture or lighting in that the piece can be identified separately from, and is capable of existing independently of, the utilitarian aspects of any useful object. The lighting element could be removed from (or never inserted into) this work, leaving a purely sculptural work. Further, one could easily imagine this work as separate from the housing and light, in that one could conceivably remove the housing and leave the original protected work unchanged.

73.    The essential creative elements of *Glaze Pendant* are non-functional. There is nothing about such elements that improves the functioning of the piece as a

ERIKSON LAW GROUP
ATTORNEYS
LOS ANGELES CA

COMPLAINT

light or yields any utilitarian or functional advantage. These essential creative elements do not make the light provided by a *Glaze Pendant* better in any way, or more interesting; nor are they essential to the use, purpose, cost, or quality of the lights.

74.    Plaintiffs have complied in all respects with the Copyright Act and all other laws governing copyright. *Glaze Pendant* is exempt from the registration requirement under 17 U.S.C. § 411 because it is not a "United States work," as that term is defined under 17 U.S.C. § 101. In addition to the *Glaze Pendant* copyright referred to above, Plaintiffs are the owners and proprietors of all right, title and interest to the copyrights in various iterations, embodiments, derivatives, and further editions of *Glaze Pendant* which are either unpublished or not United States works.

75.    Defendants had access to Plaintiffs' *Glaze Pendant* design including, without limitation, through access to Plaintiffs' goods sold and displayed in the marketplace, and, for Innermost, through its prior licensing deals with Ms. Warm.

76.    Defendants, with full knowledge of Plaintiffs' rights, infringed Plaintiffs' copyrights by producing, manufacturing, promoting, and/or selling its own goods, including the "Glaze Pendant" (pictured above), which is copied from and substantially similar to Plaintiff's *Glaze Pendant* design, including through Innermost's, IMDC's, and LightForm's distribution channels (including in stores, on the Defendants' websites and through catalogs and interior design channels). Defendants clearly copied the separable artistic elements of Plaintiff's work. A side-by-side comparison of *Glaze Pendant* with Defendants' infringing products reveals that Defendants slavishly copied the protectable elements of *Glaze Pendant*; and that the works are knockoffs and counterfeits of Plaintiffs' design.

77.    To make the infringement and intellectual property theft even more damaging, Defendants market and sell the *Glaze Pendant* knockoffs under the same name as Warm's design—i.e. Glaze Pendant—and attribute the infringing works as Warm products.

78.     All Defendants are liable for the infringement. On information and belief, all the Defendants worked together to conceive of, copy, produce and sell unauthorized copies of Plaintiffs' *Glaze Pendant*, which were marketed and offered for sale by all Defendants in the United States including California, and by Innermost and LightForm in the rest of the world. All Defendants directly profited from the infringement and had the practical right to approve or veto the scheme.

79.     All such acts were performed by Defendants without the permission, license, or consent of Plaintiffs. Plaintiffs have notified Defendants in writing of the infringements. As described above, all Defendants have continued to produce, manufacture, promote, and sell the infringing products even after receiving Plaintiffs' protests and demands that such infringement cease.

80.     Defendants continue to infringe and sell the infringing works in violation of Plaintiffs' copyright, and further have engaged in unfair trade practices and unfair competition in connection with their publication and sale of the infringing works, thus causing irreparable damage.

81.     By reason of Defendants' acts of copyright infringement, Plaintiffs have suffered, and will continue to suffer substantial damages to their business in the form of diversion of trade, loss of profits, and a dilution in the value of Plaintiffs' rights and reputation, all in amounts that are not yet ascertainable, but not less than the jurisdictional minimum of this Court.

82.     By reason of Defendants' infringement of Plaintiffs' copyright, Defendants are liable to Plaintiffs for the actual damages incurred by Plaintiffs due to the infringement, and for any profits of Defendants' directly or indirectly attributable to such infringement.

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

COMPLAINT

**Fourth Claim for Relief for Trade Dress Infringement (Circus Pendant Trade Dress) in Violation of The Lanham Act 15 U.S.C. §1125(a)**

**(Against all Defendants)**

83.    Plaintiffs incorporate by this reference all other paragraphs in this pleading, as if fully set forth in full in this cause of action.

84.    Defendants violated the Lanham Act through their advertising, promotion, distribution, sale, importation and offering for sale infringing products bearing the signature and recognizable elements of Plaintiffs' trademarks and trade dress. The public has come to recognize certain signature features as indicating Plaintiffs as the source of those goods. These features are referred to as the "Circus Pendant Trade Dress."

85.    Plaintiffs' pieces incorporating the Circus Pendant Trade Dress have enjoyed substantial and noteworthy success. The public has come to recognize the Circus Pendant Trade Dress as indicating Plaintiffs as the source of objects incorporating them.

86.    Plaintiffs have invested a substantial amount of time, money, and other resources in establishing the Circus Pendant Trade Dress in the minds of consumers as a source of high quality, stylish, lighting. As a result of Plaintiffs' substantial use and promotion of the Circus Pendant Trade Dress in connection with lighting, the Circus Pendant Trade Dress has acquired great value as a specific identifier of Plaintiffs' products and serves to distinguish Plaintiffs' products from those of others. Customers in this Judicial District and elsewhere readily recognize the Circus Pendant Trade Dress as distinctive designations of origin of Plaintiffs' products. The Circus Pendant Trade Dress is of great value as a symbol of Plaintiffs' quality products and goodwill.

87.    Attempting to ride the coattails of Plaintiffs' substantial investment and success, Defendants are using Plaintiffs' trade dress to offer for sale, distribute, market, and/or sell competing works (i.e., lighting) that bear the Circus Pendant Trade

Dress. As a result, customers (especially sophisticated consumers and dealers) are

likely led to mistakenly believe that Defendants' pieces are associated with Plaintiffs.

88.    The Circus Pendant Trade Dress is depicted in the images of *Circus Pendant* above.

89.    The trade dress described above serves a branding function. Customers, including dealers and sophisticated buyers, have come to recognize pieces incorporating the Circus Pendant Trade Dress as having Plaintiffs as their source. Plaintiffs intended to, and continue to intend to, produce this secondary meaning, which is extremely valuable to Plaintiffs. Plaintiffs' branding efforts included showing and marketing the pieces as broadly as possible, including by exhibiting the work in galleries and stores, and on the internet—and by attending high-profile design fairs to present Ms. Warm's work to the industry.

90.    The Circus Pendant Trade Dress is non-functional. There is nothing about the elements of the Circus Pendant Trade Dress that improve the functioning of a piece as a light or yield any utilitarian or functional advantage. The Circus Pendant Trade Dress does not make the light provided by a *Circus Pendant* better in any way, or more interesting—especially given the almost unlimited number of design alternatives that would process and diffuse a raw light source in the same way. None of the elements of the Circus Pendant Trade Dress are essential to the use, purpose, cost, or quality of the lights. Plaintiffs' exclusive use of their trade dress would not put competitors at any non-reputation-related disadvantage.

91.    Defendants' actions, as set forth above, constitute a violation of the Lanham Act and other applicable law, insofar as Defendants are knowingly using Plaintiffs' trade dress, thereby falsely designating the source of the origin of Defendants' goods, and raising a likelihood of confusion among the public as to the source of Defendants' goods. More specifically, given the broad awareness of Ms. Warm and her work, there is a substantial likelihood that buyers could look at Defendants' Circus Pendant and mistakenly believe it was the work of Ms. Warm. For

clarity, Plaintiffs allege via this claim that Defendants are passing off their products as being associated with or produced by Plaintiffs—not that Defendants are taking credit for Plaintiffs' creativity. The latter misconduct is alleged by way of Plaintiffs' copyright claims.

92.    Defendants sell their infringing goods for a fraction of Plaintiffs' prices.

93.    Plaintiffs notified Defendants that their use of signature elements and Plaintiffs' trade dress infringes Plaintiffs' exclusive rights.

94.    At all relevant times Defendants have had full knowledge of Plaintiffs' ownership of and exclusive rights in and to the Circus Pendant Trade Dress.

95.    As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have suffered and will continue to suffer irreparable injury.

96.    Defendants knew, or by the exercise of reasonable care should have known, that their adoption, commencement of use in commerce, and continuing use of the Circus Pendant Trade Dress in connection with their lighting and furniture designs would cause confusion, mistake, or deception among purchasers, users, and the public. Defendants knew of Plaintiffs' prior use of the Circus Pendant Trade Dress, and by adopting, commencing to use in commerce, and continuing to use the Circus Pendant Trade Dress, Defendants intended to and did induce, and intend to and will induce consumers to purchase its products by trading off the extensive goodwill built up by Plaintiffs in the Circus Pendant Trade Dress.

97.    Defendants' actions constitute infringement of the Circus Pendant Trade Dress in violation of Plaintiffs' rights under §32 of the Lanham Act, 15 U.S.C. §1125(a).

98.    Plaintiffs have been damaged by Defendants' infringement of the Circus Pendant Trade Dress by reason of the likelihood that potential customers have been confused as to the source of Defendants' goods and the relationship of those goods to Plaintiffs.

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

23                                    COMPLAINT

99.    Defendants have profited from their infringing use of the Circus Pendant Trade Dress.

100.    By reason of Defendants' actions alleged herein, Plaintiffs have suffered damage to their goodwill and the loss of sales and profits that they would have received but for Defendants' wrongful use of the Circus Pendant Trade Dress.

101.    The foregoing conduct by Defendants has been knowing, deliberate, willful, intended to cause confusion, or to cause mistake or to deceive, in disregard of Plaintiffs' rights.

**Fifth Claim for Relief for Trade Dress Infringement (Circus Wall Trade Dress) in Violation of The Lanham Act 15 U.S.C. §1125(a)**

**(Against all Defendants)**

102.    Plaintiffs incorporate by this reference all other paragraphs in this pleading, as if fully set forth in full in this cause of action.

103.    Defendants violated the Lanham Act through their advertising, promotion, distribution, sale, importation and offering for sale infringing lighting bearing the signature and recognizable elements of Plaintiffs' trademarks and trade dress. The public has come to recognize certain signature features as indicating Plaintiffs as the source of those goods. These features are referred to as the "Circus Wall Trade Dress."

104.    Plaintiffs' pieces incorporating the Circus Wall Trade Dress have enjoyed substantial and noteworthy success. The public has come to recognize the Circus Wall Trade Dress as indicating Plaintiffs as the source of objects incorporating them.

105.    Plaintiffs have invested a substantial amount of time, money, and other resources in establishing the Circus Wall Trade Dress in the minds of consumers as a source of high quality, stylish, lighting. As a result of Plaintiffs' substantial use and promotion of the Circus Wall Trade Dress in connection with lighting, the Circus Wall Trade Dress has acquired great value as a specific identifier of Plaintiffs'

products and serves to distinguish Plaintiffs' products from those of others. Customers in this Judicial District and elsewhere readily recognize the Circus Wall Trade Dress as distinctive designations of origin of Plaintiffs' products. The Circus Wall Trade Dress is of great value as a symbol of Plaintiffs' quality products and goodwill.

106.    Attempting to ride the coattails of Plaintiffs' substantial investment and success, Defendants are using Plaintiffs' trade dress to offer for sale, distribute, market, and/or sell competing works (i.e., lighting) that bear the Circus Wall Trade Dress. As a result, customers (especially sophisticated consumers and dealers) are likely led to mistakenly believe that Defendants' pieces are associated with Plaintiffs.

107.    The Circus Wall Trade Dress is depicted in the images of Plaintiffs' *Circus Wall* above.

108.    The trade dress described above serves a branding function. Customers, including dealers and sophisticated buyers, have come to recognize pieces incorporating the Circus Wall Trade Dress as having Plaintiffs as their source. Plaintiffs intended to, and continue to intend to, produce this secondary meaning, which is extremely valuable to Plaintiffs. Plaintiffs' branding efforts included showing and marketing the pieces as broadly as possible, including by exhibiting the work in galleries and stores, and on the internet—and by attending high-profile design fairs to present Ms. Warm's work to the industry.

109.    The Circus Wall Trade Dress is non-functional. There is nothing about the elements of the Circus Wall Trade Dress that improve the functioning of a piece as a light or yield any utilitarian or functional advantage. The Circus Wall Trade Dress does not make the light provided by a *Circus Wall* lamp better in any way, or more interesting—especially given the almost unlimited number of design alternatives that would process and diffuse a raw light source in the same way. None of the elements of the Circus Wall Trade Dress are essential to the use, purpose, cost, or quality of the lights. Plaintiffs' exclusive use of their trade dress would not put competitors at any non-reputation-related disadvantage.

110.   Defendants' actions, as set forth above, constitute a violation of the Lanham Act and other applicable law, insofar as Defendants are knowingly using Plaintiffs' trade dress, thereby falsely designating the source of the origin of Defendants' goods, and raising a likelihood of confusion among the public as to the source of Defendants' goods. More specifically, given the broad awareness of Ms. Warm and her work, there is a substantial likelihood that buyers could look at Defendants' Circus Wall lamp and mistakenly believe it was the work of Ms. Warm. For clarity, Plaintiffs allege via this cause of action that Defendants are passing off their products as being associated with or produced by Plaintiffs—not that Defendants are taking credit for Plaintiffs' creativity. The latter misconduct is alleged by way of Plaintiffs' copyright claims.

111.   Defendants sell their infringing goods for a fraction of Plaintiffs' prices.

112.   Plaintiffs notified Defendants that their use of signature elements and Plaintiffs' trade dress infringes Plaintiffs' exclusive rights.

113.   At all relevant times Defendants have had full knowledge of Plaintiffs' ownership of and exclusive rights in and to the Circus Wall Trade Dress.

114.   As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have suffered and will continue to suffer irreparable injury.

115.   Defendants knew, or by the exercise of reasonable care should have known, that their adoption, commencement of use in commerce, and continuing use of the Circus Wall Trade Dress in connection with their lighting and furniture designs would cause confusion, mistake, or deception among purchasers, users, and the public. Defendants knew of Plaintiffs' prior use of the Circus Wall Trade Dress, and by adopting, commencing to use in commerce, and continuing to use the Circus Wall Trade Dress, Defendants intended to and did induce, and intend to and will induce consumers to purchase its products by trading off the extensive goodwill built up by Plaintiffs in the Circus Wall Trade Dress.

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

COMPLAINT

116.    Defendants' actions constitute infringement of the Circus Wall Trade Dress in violation of Plaintiffs' rights under §32 of the Lanham Act, 15 U.S.C. §1125(a).

117.    Plaintiffs have been damaged by Defendants' infringement of the Circus Wall Trade Dress by reason of the likelihood that potential customers have been confused as to the source of Defendants' goods and the relationship of those goods to Plaintiffs.

118.    Defendants have profited from their infringing use of the Circus Wall Trade Dress.

119.    By reason of Defendants' actions alleged herein, Plaintiffs have suffered damage to their goodwill and the loss of sales and profits that they would have received but for Defendants' wrongful use of the Circus Wall Trade Dress.

120.    The foregoing conduct by Defendants has been knowing, deliberate, willful, intended to cause confusion, or to cause mistake or to deceive, in disregard of Plaintiffs' rights.

**Sixth Claim for Relief for Trade Dress Infringement (Glaze Trade Dress) in Violation of The Lanham Act 15 U.S.C. §1125(a)**

**(Against all Defendants)**

121.    Plaintiffs incorporate by this reference all other paragraphs in this pleading, as if fully set forth in full in this cause of action.

122.    Defendants violated the Lanham Act through their advertising, promotion, distribution, sale, importation and offering for sale infringing lighting bearing the signature and recognizable elements of Plaintiffs' trademarks and trade dress. The public has come to recognize certain signature features as indicating Plaintiffs as the source of those goods. These features are referred to as the "Glaze Trade Dress."

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

COMPLAINT

123.   Plaintiffs' pieces incorporating the Glaze Trade Dress have enjoyed substantial and noteworthy success. The public has come to recognize the Glaze Trade Dress as indicating Plaintiffs as the source of objects incorporating them.

124.   Plaintiffs have invested a substantial amount of time, money, and other resources in establishing the Glaze Trade Dress in the minds of consumers as a source of high quality, stylish, lighting. As a result of Plaintiffs' substantial use and promotion of the Glaze Trade Dress in connection with lighting, the Glaze Trade Dress has acquired great value as a specific identifier of Plaintiffs' products and serves to distinguish Plaintiffs' products from those of others. Customers in this Judicial District and elsewhere readily recognize the Glaze Trade Dress as distinctive designations of origin of Plaintiffs' products. The Glaze Trade Dress is of great value as a symbol of Plaintiffs' quality products and goodwill.

125.   Attempting to ride the coattails of Plaintiffs' substantial investment and success, Defendants are using Plaintiffs' trade dress to offer for sale, distribute, market, and/or sell competing works (i.e., lighting) that bear the Glaze Trade Dress. As a result, customers (especially sophisticated consumers and dealers) are likely led to mistakenly believe that Defendants' pieces are associated with Plaintiffs.

126.   The Glaze Trade Dress is depicted in the images of *Glaze Pendant* above.

127.   The trade dress described above serves a branding function. Customers, including dealers and sophisticated buyers, have come to recognize pieces incorporating the Glaze Trade Dress as having Plaintiffs as their source. Plaintiffs intended to, and continue to intend to, produce this secondary meaning, which is extremely valuable to Plaintiffs. Plaintiffs' branding efforts included showing and marketing the pieces as broadly as possible, including by exhibiting the work in galleries and stores, and on the internet—and by attending high-profile design fairs to present Ms. Warm's work to the industry.

128.   The Glaze Trade Dress is non-functional. There is nothing about the elements of the Glaze Trade Dress that improve the functioning of a piece as a light or

yield any utilitarian or functional advantage. The Glaze Trade Dress does not make the light provided by a *Glaze Pendant* better in any way, or more interesting—especially given the almost unlimited number of design alternatives that would process and diffuse a raw light source in the same way. None of the elements of the Glaze Trade Dress are essential to the use, purpose, cost, or quality of the lights. Plaintiffs' exclusive use of their trade dress would not put competitors at any non-reputation-related disadvantage.

129.   Defendants' actions, as set forth above, constitute a violation of the Lanham Act and other applicable law, insofar as Defendants are knowingly using Plaintiffs' trade dress, thereby falsely designating the source of the origin of Defendants' goods, and raising a likelihood of confusion among the public as to the source of Defendants' goods. More specifically, given the broad awareness of Ms. Warm and her work, there is a substantial likelihood that buyers could look at Defendants' Glaze Pendant, and mistakenly believe it was the work of Ms. Warm. For clarity, Plaintiffs allege via this cause of action that Defendants are passing off their products as being associated with or produced by Plaintiffs—not that Defendants are taking credit for Plaintiffs' creativity. The latter misconduct is alleged by way of Plaintiffs' copyright claims.

130.   Defendants sell their infringing goods for a fraction of Plaintiffs' prices.

131.   Plaintiffs notified Defendants that their use of signature elements and Plaintiffs' trade dress infringes Plaintiffs' exclusive rights.

132.   At all relevant times Defendants have had full knowledge of Plaintiffs' ownership of and exclusive rights in and to the Glaze Trade Dress.

133.   As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have suffered and will continue to suffer irreparable injury.

134.    Defendants knew, or by the exercise of reasonable care should have known, that their adoption, commencement of use in commerce, and continuing use of the Glaze Trade Dress in connection with their lighting and furniture designs would

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

cause confusion, mistake, or deception among purchasers, users, and the public. Defendants knew of Plaintiffs' prior use of the Glaze Trade Dress, and by adopting, commencing to use in commerce, and continuing to use the Glaze Trade Dress, Defendants intended to and did induce, and intend to and will induce consumers to purchase its products by trading off the extensive goodwill built up by Plaintiffs in the Glaze Trade Dress.

135.   Defendants' actions constitute infringement of the Glaze Trade Dress in violation of Plaintiffs' rights under §32 of the Lanham Act, 15 U.S.C. §1125(a).

136.   Plaintiffs have been damaged by Defendants' infringement of the Glaze Trade Dress by reason of the likelihood that potential customers have been confused as to the source of Defendants' goods and the relationship of those goods to Plaintiffs.

137.   Defendants have profited from their infringing use of the Glaze Trade Dress.

138.   By reason of Defendants' actions alleged herein, Plaintiffs have suffered damage to Studio Warm's goodwill and the loss of sales and profits that it would have received but for Defendants' wrongful use of the Glaze Trade Dress.

139.   The foregoing conduct by Defendants has been knowing, deliberate, willful, intended to cause confusion, or to cause mistake or to deceive, in disregard of Plaintiffs' rights.

**Seventh Claim for Relief for False Endorsement in Violation of The Lanham Act 15 U.S.C. §1125(a)**

**(By Corinna Warm Against all Defendants)**

140.   Plaintiffs incorporate by this reference all other paragraphs of this pleading as if set forth in full in this cause of action.

141.   Ms. Warm's name has secondary meaning, as that term is understood in trademark law. Members of the public have come to recognize Ms. Warm's name as belonging to her. As described above, Defendants have falsely used Ms. Warm's name in connection with Defendants' infringing products, creating the false

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

30                                                                        COMPLAINT

impression that Ms. Warm endorses Defendants. This was done to promote and attract customers to Defendants' websites and businesses, and thereby generate revenue for Defendants. Thus, this was done in furtherance of Defendants' commercial benefit. Ms. Warm is in the business of commercializing her identity and selling her designs to the public for profit. By virtue of Ms. Warm's use of her name and identity to build her brand, her name has acquired a distinctiveness through secondary meaning.

142. The goodwill and reputation associated with Ms. Warm's name has continuously grown among the general public. Ms. Warm's name is now known throughout the United States, the State of California, and the world, as a source of origin for her design services and endorsements.

143. Defendants' use of Ms. Warm's name and identity is designed to create and does create the false and deceptive commercial impression that Defendants and their products are associated with and/or endorsed by Ms. Warm. The use by Defendants of Ms. Warm's name is likely to cause confusion, mistake, or deception of purchasers as to Ms. Warm's endorsement of the goods.

144. Customers and potential purchasers are likely to be attracted to Defendants' infringing products, creating an initial interest in the goods upon seeing them and creating a lasting appreciation, believing them to be endorsed by or otherwise associated with Ms. Warm, thereby resulting in consumer confusion. Defendants' conduct will damage Ms. Warm's ability to enjoy, maintain and exploit her hard-won recognition—and indeed, threatens to disrupt her contractual relationships with her clients.

145. By Defendants' conduct alleged here, Defendants have wrongfully appropriated for themselves business and goodwill value that properly belongs to Ms. Warm and that Ms. Warm has invested time, money, and energy in developing.

146. By reason of Defendants' acts of unfair competition as alleged herein, Ms. Warm has suffered and will continue to suffer substantial damage to her business in the form of diversion of trade, loss of profits, and a dilution in the value of her

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

COMPLAINT

rights and reputation, all in amounts which are not yet ascertainable, but which are estimated to be not less than the jurisdictional minimum of this court.

147.   By virtue of Defendants' acts hereinabove described, Defendants have committed, and are continuing to commit, unlawful, unfair, and fraudulent business acts in violation of, *inter alia*, 15 U.S.C. § 1125(a).

148.   Defendants' acts of unfair competition in violation of 15 U.S.C. § 1125(a) have caused, and will continue to cause, damage and irreparable harm to Ms. Warm (as described above) and are likely to continue unabated, thereby causing further damage and irreparable harm to Ms. Warm, and to the goodwill associated with Ms. Warm's valuable and well-known name; and Ms. Warm's business relationships, unless preliminarily and permanently enjoined and restrained by the Court.

149.   Ms. Warm has no adequate remedy at law and will suffer irreparable injury if Defendants are allowed to continue to engage in the wrongful conduct herein described.

150.   In committing these acts of unfair competition, Defendants acted willfully, wantonly, and recklessly, and with conscious disregard for Ms. Warm's rights. Ms. Warm is therefore entitled to punitive damages.

**Eighth Claim for Relief for Trademark Infringement - Violation of The Lanham Act 15 U.S.C. §1125(a)**

**(By Studio Warm Against all Defendants)**

151.   Plaintiffs incorporate by this reference all other paragraphs in this pleading, as if fully set forth in full in this cause of action.

152.   Defendants' actions, as set forth above, constitute infringement of a trademark in violation of the Lanham Act and other applicable law, insofar as Defendants have knowingly used the "Circus" and "Glaze" names (the "Warm Trademarks") in promoting and selling goods that are similar in nature to Plaintiffs',

thereby falsely designating the source of the origin of such goods and raising a likelihood of confusion among the public as to the source of Defendants' goods.

153.   Studio Warm has been damaged by Defendants' infringement of Warm's Trademarks by reason of the likelihood that potential customers have been confused as to the source of Defendants' goods and the relationship of those goods to Studio Warm.

154.   Defendants have profited from their infringing use of the Warm Trademarks.

155.   By reason of Defendants' actions alleged herein, Studio Warm has suffered damage to its goodwill and the loss of sales and profits that it would have received but for Defendants' wrongful use of the Warm Trademarks.

156.   On information and belief, Defendant's infringing use of the Warm Trademarks is willful and done without regard to Studio Warm's established trademark rights.

**Ninth Claim for Relief for Statutory Unfair Competition under California Law**
**(Cal. Bus. & Prof. Code §§17200 et seq.)**
**(Against All Defendants)**

157.   Plaintiffs incorporate herein by this reference all other paragraphs in this pleading as if set forth in full in this cause of action.

158.   Defendants' wrongful acts as described herein constitute unlawful, unfair, and/or fraudulent business practices in violation of Section 17200 et seq. of the California Business and Professions Code. These acts and practices undertaken by Defendants violate California Business & Professions Code §17200 in that they are— as described above—unfair, fraudulent, and/or unlawful.

159.   Further, without limiting the generality of the foregoing, the harm to Plaintiffs and to members of the general public far outweighs the utility of Defendants' practices and, consequently, Defendants' practices constitute an unfair business act or practice within the meaning of Cal. Bus. & Prof. Code §17200.

160.   Further, without limiting the generality of the foregoing, such acts by Defendants are unlawful in that they violate, *inter alia*, the Lanham Act.

161.   As a direct result of Defendants' unlawful, unfair, fraudulent, and deceptive business practices, Defendants have received and continue to receive income and profits that they would not have earned but for their unlawful, unfair, and deceptive conduct and Plaintiffs are entitled to disgorgement of such wrongfully obtained funds.

162.   By reason of Defendants' acts of unfair competition, Plaintiffs have suffered and will continue to suffer substantial damage to their business in the form of diversion of trade, loss of profits, and a dilution in the value of their rights, all in amounts which are not yet ascertainable, but which are estimated to be not less than the jurisdictional minimum of this court.

## Tenth Claim for Relief for Unfair Competition under California Common Law
### (Against All Defendants)

163.   Plaintiffs incorporate by this reference all other paragraphs in this pleading, as if fully set forth in full in this cause of action.

164.   The above-described conduct of Defendants constitutes unfair competition under the common law of the State of California.

165.   As a result of Defendants' actions, Plaintiffs have been damaged in an amount to be proven at trial. Plaintiffs are entitled to punitive damages, with respect to this cause of action.

## Eleventh Claim For Relief For Contributory and
## Vicarious Copyright Infringement
### (Against All Defendants)

166.   Plaintiffs incorporate by this reference all other paragraphs in this pleading, as if fully set forth in full in this cause of action.

167.   Each Defendant is contributorily liable for the infringement alleged herein because it knowingly induced, participated in, aided and abetted, and profited

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

34                                                    COMPLAINT

from the illegal reproduction and/or subsequent sales of the infringing goods.

168.   Each Defendant is vicariously liable for the infringement alleged herein because it had the right and ability to supervise the infringing conduct, including the practical ability to do so, and because it had a direct financial interest in the infringing conduct.

## Twelfth Claim for Relief for Violation of California Civil Code § 3344
## (By Ms. Warm against Innermost, IMDC, and LightForm)

169.   Plaintiffs incorporate by this reference all paragraphs of this Complaint as if set forth in full in this cause of action.

170.   California Civil Code § 3344(a) provides:

> "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof. In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages. In establishing such profits, the injured party or parties are required to prove his or her deductible expenses. Punitive damages may also be awarded to the injured party or parties. The prevailing party in any action under this section shall also be entitled to attorney's fees and costs."

171.   Defendants Innermost, IMDC, and LightForm's conduct alleged above, constitutes a violation of Section 3344 of the California Civil Code, because Innermost, IMDC, and LightForm knowingly used Ms. Warm's name and likeness for commercial purposes without authorization.

172.   Each such use was unequivocally and directly for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods, or services by Innermost, IMDC, and LightForm, such that prior consent was required.

173.   As a direct and proximate result of Innermost's, IMDC's, and LightForm's wrongful acts, Ms. Warm has been damaged in an amount that is not yet

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

COMPLAINT

1   fully ascertainable, but which exceeds the jurisdictional minimum of this court.

2       174.   Ms. Warm is informed and believes and based thereon alleges that

3   Innermost, IMDC, and LightForm in committing the above-described actions, acted

4   willfully, maliciously, and oppressively, and with full knowledge of the adverse

5   effects of their actions on Ms. Warm, and with willful and deliberate disregard for the

6   consequences to Ms. Warm. By reason thereof, Ms. Warm is entitled to recover

7   punitive and exemplary damages from Innermost, IMDC and LightForm in an amount

8   to be determined at the time of trial.

9       175.   Ms. Warm also seeks a preliminary and permanent injunction to prohibit

10  Defendants from any further use of Ms. Warm's name or likeness for Defendants'

11  advantage.

**Thirteenth Claim for Relief for Misappropriation of Name Likeness under**

**California Common Law**

**(By Ms. Warm, against Innermost, IMDC, and LightForm)**

15      176.   Plaintiffs incorporate by this reference all paragraphs of this Complaint

16  as if set forth in full in this cause of action.

17      177.   Defendants' conduct alleged above, constitutes a violation of Ms.

18  Warm's common law rights of publicity and privacy, because Defendants knowingly

19  used Ms. Warm's name and likeness for their advantage and without authorization.

20      178.   Ms. Warm is informed and believes and based thereon alleges that

21  Defendants in committing the above-described actions, acted willfully, maliciously,

22  and oppressively, and with full knowledge of the adverse effects of their actions on

23  Ms. Warm, and with willful and deliberate disregard for the consequences to Ms.

24  Warm. By reason thereof, Ms. Warm is entitled to recover punitive and exemplary

25  damages from Defendants in an amount to be determined at the time of trial.

26      179.   Ms. Warm also seeks a preliminary and permanent injunction to prohibit

27  Defendants from any further use of her name and likeness for Defendants' advantage.

28

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

36                                    COMPLAINT

# PRAYER

WHEREFORE, Plaintiffs pray judgment against Defendants as follows:

1.      That Plaintiffs are awarded all damages, including future damages, that Plaintiffs have sustained, or will sustain, as a result of the acts complained of herein, subject to proof at trial;

2.      That Plaintiffs are awarded their costs, attorneys' fees and expenses in this action;

3.      That Plaintiffs are awarded pre-judgment interest;

4.      For an order permanently enjoining Defendants and their employees, agents, servants, attorneys, representatives, successors, and assigns, and any and all persons in active concert or participation with any of them, from engaging in the misconduct referenced herein;

5.      That Defendants be ordered to immediately recall and sequester inventories of the infringing products, and to supply accountings to Plaintiffs' counsel;

6.      That Defendants be ordered to deliver their entire inventories of infringing products to a mutually selected third party for supervised destruction;

7.      That Defendants be ordered to file with this Court and serve upon Plaintiffs' counsel within thirty (30) days after service of the judgment demanded herein, a written report submitted under oath setting forth in detail the manner in which they have complied with the judgment;

8.      For disgorgement of all proceeds, and restitution of all monies received by Defendants as the result of their wrongful conduct;

9.      For punitive damages in an amount sufficient to deter Defendants from their wrongful conduct; and

10.     Such other Damages and further relief as the Court may deem appropriate.

DATED: May 26, 2021          ERIKSON LAW GROUP


By:   */s/David Erikson*
      DAVID ERIKSON
Attorneys for Plaintiffs

COMPLAINT

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

1

**DEMAND FOR JURY TRIAL**

2        Plaintiff hereby demands a jury trial on its claims on all issues triable by a jury.

3

DATED: May 26, 2021            ERIKSON LAW GROUP

4

5

6                                By:    */s/David Erikson*
                                       DAVID ERIKSON
7                                Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ERIKSON
LAW GROUP
ATTORNEYS
LOS ANGELES CA

COMPLAINT